IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

EMPIRE WEST TITLE AGENCY, L.L.C. F/K/A EMPIRE TITLE AGENCY OF
ARIZONA, L.L.C., AN ARIZONA LIMITED LIABILITY COMPANY,
*Petitioner,*

*v.*

THE HONORABLE DAVID M. TALAMANTE, JUDGE OF THE SUPERIOR COURT OF
THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF MARICOPA,
*Respondent Judge,*

DOS LAND HOLDINGS, L.L.C., AN ARIZONA LIMITED LIABILITY COMPANY,
*Real Party in Interest.*

No. CV-13-0268-PR
Filed May 7, 2014

Appeal from the Superior Court in Maricopa County
The Honorable David M. Talamante, Judge
No. CV2011-094829
**REMANDED**

Decision Order of the Court of Appeals, Division One
Filed August 13, 2013
**VACATED**

COUNSEL:

James L. Blair, Bryan M. Folger, Kevin R. Myer (argued), Renaud Cook
Drury Mesaros, PA, Phoenix, for Empire West Title Agency, LLC

Chad A. Hester, Wallin Hester, PLC, Gilbert; and Blake T. Ostler (argued),
Thompson Ostler & Olsen, Salt Lake City, UT, for DOS Land Holdings,
L.L.C.

JUSTICE PELANDER authored the opinion of the Court, in which CHIEF
JUSTICE BERCH, VICE CHIEF JUSTICE BALES, JUSTICE BRUTINEL and
JUSTICE TIMMER joined.

JUSTICE PELANDER, opinion of the Court:

¶1        In this contract case, the issue is whether the plaintiff impliedly waived the attorney–client privilege by alleging that it "reasonably believed" the defendant had met its contractual obligations. We find no waiver and hold that merely alleging the reasonableness of one's beliefs does not, in itself, waive the privilege; rather, the litigant must advance a subjective evaluation or understanding that incorporates the advice of counsel.

**I.**

¶2        In 2006, while pursuing the purchase of a vacant lot in Mesa, David Jemmett discovered a recorded quitclaim deed abandoning an access easement essential for developing the property. Empire West Title Agency, L.L.C., acting as title agent for Fidelity National Title Insurance Company, allegedly informed Jemmett that the quitclaim deed would not affect his claim to the easement. Jemmett later decided not to complete the transaction and informed Empire that DOS Land Holdings, L.L.C. would instead purchase the property.

¶3        On August 3, 2007, DOS's attorneys, Chester & Shein ("C&S"),[1] sent Empire a Closing Instructions Letter ("CIL"), which attached a legal description of the property that included the access easement. In an email accompanying the CIL, C&S asked Empire to "make sure that the legal description attached . . . is the same legal description that will be attached to the conveyance deed." Under the CIL, Empire acknowledged that, by signing, it agreed to comply with the letter's terms. Empire signed and returned the CIL, and the transaction closed on August 10, 2007. Contrary to the CIL's terms, however, the closing documents omitted the easement from the property's legal description.

¶4        In 2008, DOS sued the owners of the adjacent property to establish its right to the easement. After that case was dismissed as time-barred, DOS filed this action, naming Fidelity and Empire as defendants and alleging claims of bad faith against Fidelity and breach of contract and breach of the covenant of good faith and fair dealing against both defendants. (DOS has since settled all claims against Fidelity.) In its

---

[1]        C&S also represented Jemmett, who allegedly planned to assist in developing the property after DOS's purchase. Those facts do not affect our analysis here.

breach of contract claim against Empire, DOS alleged that, based on Empire's agreement to use the legal description attached to the CIL, DOS "reasonably believed that [the easement] was represented in all documents used at the closing."

¶5        Empire moved to compel DOS to disclose any attorney–client communications indicating whether DOS knew before close of escrow that the easement had been abandoned.  The superior court denied the motion, finding that "this matter can be litigated and decided without breaching [the attorney–client] privilege."

¶6        Empire filed a petition for special action in the court of appeals, arguing that DOS had impliedly waived the attorney-client privilege.  In an unpublished decision, the court agreed, holding that "[b]y pleading a contract claim based on its 'reasonable belief,' DOS put in issue all information in its possession at the time . . . bear[ing] on the reasonableness of its belief that Empire West agreed to provide coverage of the easement."  Distinguishing *State Farm Mutual Automobile Insurance Co. v. Lee*, 199 Ariz. 52, 13 P.3d 1169 (2000), the court of appeals stated that this case concerns "a party's reasonable belief about a particular situation," not whether an insurer reasonably responded to a demand for coverage.  The court ordered DOS and C&S to provide all attorney–client communications for which the privilege was claimed for the superior court's in-camera inspection and instructed that court to order the disclosure of communications found "relevant to the reasonableness of DOS's expectation of coverage."

¶7        We granted review on two issues:   (1) whether DOS impliedly waived the attorney–client privilege by injecting its "reasonable belief" into the litigation, and (2) whether the court of appeals' decision is overbroad.   We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.

¶8        Whether a party has impliedly waived the attorney–client privilege poses a mixed question of law and fact, which we review de novo. *Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, 254 ¶ 10, 63 P.3d 282, 285 (2003).

¶9        In *State Farm v. Lee*, we adopted the following criteria, referred to as the *Hearn* test, for determining whether the attorney–client privilege has been waived when a litigant's mental state is at issue:

"(1) [The] assertion of the privilege was a result of some affirmative act, such as filing suit [or raising an affirmative defense], by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense."

199 Ariz. at 56 ¶ 10, 13 P.3d at 1173 (emphasis omitted) (quoting *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)).[2] Under the *Hearn* test, when a litigant advances "a subjective and allegedly reasonable evaluation of the law . . . that necessarily incorporates [the advice of counsel]," confidential attorney–client communications relevant to that evaluation are discoverable. *Id.* at 58 ¶ 15, 13 P.3d at 1175; *see also id.* at 62 ¶ 28, 13 P.3d at 1179 (explaining that no waiver results unless the party asserting the privilege "has asserted some claim or defense, such as the reasonableness of its evaluation of the law, which necessarily includes the information received from counsel").

**¶10**       We emphasized in *Lee*, however, that merely filing an action or denying an allegation does not waive the privilege. *Id.* at 58 ¶ 16, 62 ¶ 28, 13 P.3d at 1175, 1179. Rather, the party claiming the privilege must affirmatively "interject[] the issue of advice of counsel into the litigation." *Id.* at 62 ¶ 28, 13 P.3d at 1179. In addition, neither the "relevance nor pragmatic importance alone [of the information sought] will support a finding that the attorney–client privilege has been waived." *Twin City,*

---

2       The Court in *Lee* also adopted the test set forth in *Restatement (Third) of The Law Governing Lawyers* § 80(1)(2000), which states in relevant part:

> The attorney–client privilege is waived for any relevant communication if the client asserts as to a material issue in a proceeding that:
> (a) the client acted upon the advice of a lawyer or that the advice was otherwise relevant to the legal significance of the client's conduct.

199 Ariz. at 62 ¶ 27, 13 P.3d at 1179. Although that test provided additional support for our decision in *Lee*, *id.* ¶ 28, it applies when a litigant's legal knowledge is at issue, a situation not presented here. Regardless, because the *Restatement* test is consistent with and encompassed by the broader *Hearn* test, we need not apply both tests here.

4

204 Ariz. at 256 ¶ 22, 63 P.3d at 287; *see also Lee*, 199 Ariz. at 58 ¶ 15, 13 P.3d at 1175.

**¶11** The underlying issue in *Lee* was whether defendant State Farm acted in bad faith when it denied its policyholders' underinsured and uninsured motorist claims based on State Farm's interpretation of a policy provision. 199 Ariz. at 54–55 ¶¶ 2–4, 13 P.3d at 1171–72. During discovery, State Farm refused to produce its communications with counsel relating to the denials, invoking the attorney–client privilege. *Id.* at 55 ¶ 5, 13 P.3d at 1172. Although it admitted receiving advice from counsel before deciding whether to pay the claims, State Farm argued that its conduct was objectively and subjectively reasonable based on "what its personnel actually knew," not based on its lawyers' advice. *Id.* at 57 ¶ 13, 13 P.3d at 1174 (emphasis, citation, and internal quotation marks omitted).

**¶12** We held that by asserting "the subjective evaluation and understanding of its personnel about the state of the law" as a defense, State Farm "affirmatively injected" those issues into the litigation and thereby invited scrutiny of the bases of that legal knowledge, including any relevant communications with counsel. *Id.* at 65 ¶ 34, 13 P.3d at 1182. State Farm's defense of its employees' "subjective belief," which in turn was directly based on "information and advice received from a number of lawyers," was crucial to our finding an implied waiver in *Lee*. *Id.* at 66 ¶ 38, 13 P.3d at 1183. It would make "a mockery of the law," we explained, to allow a litigant to assert that it acted reasonably based on its interpretation of law, "while at the same time allowing that litigant to withhold . . . information it received from counsel on that very subject." *Id.* at 65 ¶ 33, 13 P.3d at 1182.

**¶13** This case differs from *Lee*, though not for the reason advanced by the court of appeals. *Lee* was an "unusual case" involving waiver of the attorney–client privilege when "the mental state of a litigant [was] at issue." *Id.* at 54 ¶ 1, 57 ¶ 11, 13 P.3d at 1171, 1174. We considered the waiver issue "only in light of the bad faith and fraud counts" in the plaintiffs' complaint. *Id.* at 55 ¶ 3, 13 P.3d at 1172.

**¶14** In contrast to State Farm's defense against the bad faith claims in *Lee*, the breach of contract claim in this case does not depend on DOS's mental state or subjective knowledge. And, unlike State Farm, DOS has not affirmatively put those matters at issue. It simply alleged that Empire breached the parties' contract by failing to comply with the CIL's terms. Although DOS's knowledge of the alleged title defect might be material to Empire's defense, DOS has done nothing to inject that issue

5

into the litigation. Merely pleading a claim, as we noted in *Lee*, does not waive the attorney–client privilege. *Id.* at 58 ¶ 16, 62 ¶ 28, 13 P.3d at 1175, 1179.

¶15 The statement in DOS's complaint that it "reasonably believed" that the CIL's property description, including the easement, was included in all closing documents does not alter our analysis. That allegation is not essential to stating the breach of contract claim and therefore did not place DOS's mental state or subjective knowledge "at issue." As DOS's counsel acknowledged at oral argument, DOS could have sufficiently alleged its contract claims against Empire without the "reasonable belief" assertion. That allegation reflects DOS's factual understanding of the CIL, rather than "a subjective and allegedly reasonable evaluation of the law . . . that necessarily incorporates" knowledge or advice obtained from counsel and that formed a basis for State Farm's defense in *Lee*. *Id.* at 58 ¶ 15, 13 P.3d at 1175. We will not find a waiver based merely on imprecise or superfluous pleading.

¶16 Even if DOS's state of mind were at issue, Empire has not demonstrated that denying it access to the requested communications would undermine its defense. *See Twin City*, 204 Ariz. at 256–57 ¶ 22, 63 P.3d at 287–88 (finding no implied waiver in part because the "[t]he evaluation of Twin City's counsel is not *vital* to General Star's defense"). Empire has other means of obtaining information about what DOS knew or should have known regarding the easement's purported abandonment. For instance, because agency law principles apply to the attorney–client relationship, *Panzino v. City of Phoenix*, 196 Ariz. 442, 447 ¶ 16, 999 P.2d 198, 203 (2000), C&S's knowledge about the allegedly abandoned easement may be imputable to DOS. *See Restatement (Third) of Agency* § 5.03 (2006). We see no reason to disturb the superior court's ruling that "this matter can be litigated and decided without breaching [the] privilege." *Cf. Lee*, 199 Ariz. at 67 ¶ 40, 13 P.3d at 1184 (deferring to trial judge's finding that State Farm "implicitly asserted the advice of counsel as a defense").

¶17 Finally, the policy concern that motivated our decision in *Lee* is not implicated here. Unlike State Farm, DOS has not "'thrust [its] lack of knowledge into the litigation'" as a basis for its claim, while at the same time asserting the privilege so as to frustrate discovery of what it actually knew. *See Lee*, 199 Ariz. at 58–59 ¶ 18, 13 P.3d at 1175–76 (quoting *Ulibarri v. Superior Court in & for Cnty. of Coconino (Gerstenberger)*, 184 Ariz. 382, 385, 909 P.2d 449, 452 (App. 1995)). Rather, DOS is attempting to use the privilege purely as a shield, consistent with its intended purpose. *See*

6

A.R.S. § 12-2234; *Ulibarri*, 184 Ariz. at 384, 909 P.2d at 451 (noting that the purpose of the attorney–client privilege is "to encourage a client to provide all information to the attorney so the attorney can provide effective legal representation to the client").

### III.

**¶18**  The court of appeals erred in ruling that DOS impliedly waived the privilege by pleading its "reasonable belief" in this breach of contract case. In light of this conclusion, we need not address the second issue raised. We vacate the court of appeals' decision order and remand the case to the superior court for further proceedings consistent with this opinion.

**¶19**  Both parties request an award of attorneys' fees pursuant to A.R.S. § 12-341.01. Empire has not prevailed and is therefore ineligible for a fee award. Exercising our discretion, we deny DOS's fee request without prejudice to DOS seeking an award by the superior court of fees expended on appeal if DOS ultimately prevails.