Robert GARDUNO, et al., Plaintiffs,

v.

AUTOVEST LLC, et al., Defendants.

No. CV–15–01016–PHX–ROS

United States District Court,
D. Arizona.

Signed October 26, 2015

October 27, 2015

---

Floyd W. Bybee, Bybee Law Center PLC, Chandler, AZ, for Plaintiffs Robert Garduno and Theresa Ruiz.

Robert Travis Campbell, Simmonds & Narita LLP, San Francisco, CA, Cynthia Lee Fulton, Fulton Friedman & Gullace PLLC, Phoenix, AZ, for Defendants Autovest LLC and Fulton, Friedman & Gullace LLP.

## ORDER

Roslyn O. Silver, Senior United States District Judge

Plaintiffs were sued by Defendants in state court for not paying off a car loan. According to Plaintiffs, Defendants waited too long to file that suit. Plaintiffs now allege the filing of the state court suit violated the Fair Debt Collection Practices Act ("FDCPA"). Defendants seek judgment on the pleadings, arguing this suit is barred by the *Rooker-Feldman* doctrine or because the FDCPA claim was a compul-

sory counterclaim that should have been raised in state court. Defendants are incorrect and Plaintiffs' claim may proceed.

## BACKGROUND

In 2007, Plaintiffs Robert Garduno and Theresa Ruiz purchased a car. To finance that purchase, Plaintiffs took out a loan from the car dealer, secured by the car. (Doc. 1 at 3). The car dealer later assigned the debt to Wells Fargo Bank. After Plaintiffs fell behind on their payments, Wells Fargo repossessed and sold the vehicle in April 2009. The sales proceeds were not enough to satisfy the outstanding balance. Wells Fargo then sold the debt to Defendant Autovest LLC. Autovest hired the law firm of Fulton, Friedman & Gullace, LLP ("FFG"), to assist "in collecting the claimed deficiency balance from Plaintiffs." (Doc. 1 at 3).

On June 17, 2014—well over five years after the car was repossessed—FFG filed a lawsuit in Maricopa County Superior Court. That lawsuit, brought on behalf of Autovest, was an attempt to collect on the deficiency balance. (Doc. 15–1 at 5). Plaintiffs allege the lawsuit was barred by the statute of limitations at the time it was filed and Defendants Autovest and FFG knew as much. Despite the suit being untimely, Plaintiffs did not raise that issue in state court and eventually stipulated to entry of judgment in the amount of $24,971.32. (Doc. 1 at 4). The state court entered judgment in January 2015. (Doc. 15–1 at 23).

On June 3, 2015, Plaintiffs filed the present suit alleging a single claim under the FDCPA. As described by Plaintiffs, their claim is that Autovest and FFG (collectively, "Defendants") violated the FDCPA "by filing suit on a time-barred debt." (Doc. 23 at 2). Defendants answered the complaint but shortly thereafter filed a motion for judgment on the pleadings. Defendants' motion argues this suit constitutes

an inappropriate challenge to the state court judgment or that Plaintiffs were required to assert their FDCPA claim in the state proceedings as a compulsory counterclaim.

## ANALYSIS

### I. Standard for Motion for Judgment on the Pleadings

The standard for evaluating a motion to dismiss is "functionally identical" to the standard for evaluating a motion to dismiss. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1055 n. 4 (9th Cir.2011). Thus, to survive a motion for judgment on the pleadings, the complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief" so that the defendant has "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. The Court must accept all factual allegations as true but need not accept legal conclusions. *Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.,* 611 F.3d 495, 501 (9th Cir.2009).

### II. *Rooker–Feldman* Doctrine Does Not Bar Suit

Defendants' first argument is that the present suit constitutes an inappropriate collateral attack on the state court judgment such that the *Rooker–Feldman* doctrine bars this Court from hearing Plaintiffs' FDCPA claim. Plaintiffs respond that they are not contesting the state court judgment and, therefore, the *Rooker–Feldman* doctrine does not apply.

In general, "[t]he *Rooker–Feldman* doctrine forbids a losing party in state court from filing suit in federal district court complaining of an injury caused by a state court judgment, and seeking federal court review and rejection of that judgment." *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir.2013). Applying this general rule consists of two steps. First, a court must determine if one of the claims in the federal case is "a forbidden de facto appeal of a state court decision." *Id.* If one of the claims is not a de facto appeal, the *Rooker–Feldman* inquiry ends and the case may proceed. *Id.* If one of the claims *does* constitute a de facto appeal, the claim constituting that appeal is barred as is any claim " 'inextricably intertwined' with the state court judicial decision." *Id.* To be clear, this "inextricably intertwined" test "is not a test to determine whether a claim is a de facto appeal, but is·rather a second and distinct step in the *Rooker–Feldman* analysis." *Id. See also Moore's Federal Practice* § 133.33[2][e] (explaining *Rooker–Feldman* doctrine bars any claim that is a "de facto appeal" as well as any inextricably intertwined claim). Accordingly, the crucial issue is determining whether Plaintiffs' FDCPA claim is a de facto appeal.

At oral argument, defense counsel claimed the foregoing was a misinterpretation of the *Rooker–Feldman* doctrine. Defense counsel pointed to *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855 (9th Cir. 2008), as requiring a much broader application of the doctrine. In *Reusser*, the Ninth Circuit held "[a] federal action constitutes . . . a *de facto* appeal where claims raised in the federal court action are inextricably intertwined with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules." *Id.* at 859. This definition is contrary to that set forth by the Ninth Circuit in the 2013 *Bell* decision and also contrary to multiple earlier Ninth Circuit decisions. *See Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir.2003); *Cooper v. Ramos*, 704 F.3d 772, 778 (9th Cir.2012). Usually, this type of intra-circuit conflict would require an analysis of which Ninth Circuit decision came first and whether the earlier decision had "been undercut by higher authority" such that the later decision might be the correct statement of the law. *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir.2003). But the situation here is different.

The analysis of the *Rooker–Feldman* doctrine in *Bell* is based on the analysis set forth in a case from 2003, *Noel v. Hall*, 341 F.3d 1148 (9th Cir.2003). And the *Noel* case was cited with approval by the Supreme Court in 2005. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). The analysis by the Supreme Court in *Exxon* appears to be premised on the type of two-step analysis set forth in *Noel*. *See Moore's Federal Practice* § 133.33[2][e] (explaining analysis in *Exxon* "makes sense" under *Noel*'s two-step approach). Accordingly, the conflation of the two steps in *Reusser* is contrary to both earlier Ninth Circuit authority as well as Supreme Court authority. In this situation, the Court will follow the majority of Ninth Circuit cases and conduct the inquiry regarding "de facto appeal" before moving on, if necessary, to the "inextricably intertwined" inquiry. *See Cooper v. Ramos*, 704 F.3d 772, 778 (9th Cir.2012) ("Our circuit has emphasized that [o]nly when there is already a forbidden de facto appeal in federal court does the inextricably intertwined test come into play.") (internal quotation marks and citation omitted).

Under the appropriate two-step approach, the *Rooker–Feldman* analysis in

this case is relatively straightforward. Plaintiffs' FDCPA claim is not a direct attempt to complain of an erroneous decision by the state court. In fact, for purposes of Plaintiffs' FDCPA claim, the state court judgment is largely irrelevant; the alleged violation of the FDCPA occurred when Defendants filed their state court lawsuit and the fact that judgment was eventually entered in that case does not directly impact the FDCPA claim. Plaintiffs' FDCPA claim is not complaining about the state court judgment but of "an allegedly illegal act" by Defendants (i.e., filing suit on a time-barred debt). *Bell,* 709 F.3d at 897. *See also MSK EyEs Ltd. v. Wells Fargo Bank, Nat. Ass'n,* 546 F.3d 533, 539 (8th Cir.2008) (*Rooker–Feldman* distinguishes between "attacking the decision of a state court" and "attacking an adverse party's actions in obtaining and enforcing that decision").

In addition, Plaintiffs are not seeking relief from the state court judgment. Plaintiffs make very clear "that the state-court judgment [is] valid" and they are not "attacking the [state court] judgment" nor are they "trying to set it aside." (Doc. 23 at 10, 12). Thus, Plaintiffs concede that regardless of the outcome of their FDCPA claim, the state court judgment will remain in place. The fact that Plaintiffs do not seek to undo the state court judgment strongly supports finding the *Rooker–Feldman* doctrine inapplicable. *See Bianchi v. Rylaarsdam,* 334 F.3d 895, 900 (9th Cir.2003) ("[U]nder *Rooker–Feldman,* we must pay close attention to the relief sought by the federal-court plaintiff.") (internal quotation marks and citation omitted). In sum, Plaintiffs are not seeking relief from the state court judgment and

their FDCPA claim is not a de facto appeal. Therefore, the *Rooker–Feldman* doctrine does not bar Plaintiffs' FDCPA claim. Other courts presented with similar situations have reached the same conclusion.

In *McNair v. Maxwell & Morgan PC,* the plaintiff alleged the defendants had violated the FDCPA by taking certain actions, even though those actions were consistent with a stipulation "accepted" by the Maricopa County Superior Court. No. CV–14–00869–PHX–DGC, 2014 WL 4209248, at *1–2 (D.Ariz. Aug. 26, 2014). The defendants argued *Rooker–Feldman* prevented the court from hearing a FDCPA claim based on such allegations. The district court rejected that argument, finding the FDCPA claim was not seeking "review of a state court decision" nor was it a "de facto equivalent." *Id.* at 4. Thus, the *Rooker–Feldman* doctrine was not implicated. Similarly, in *Riding v. Cach LLC,* the plaintiff alleged a variety of different types of FDCPA claims after a state court had entered judgment on the underlying debt. The court divided the FDCPA claims into those that sought to "undercut the state court ruling" and those that were premised on "improper collection methods." The former were barred by *Rooker–Feldman* but the latter were not. In context, that meant the plaintiff could not assert any FDCPA claims premised on him being found not liable for the state court judgment but the plaintiff could contest the manner in which the defendant went about obtaining that judgment.[1] Defendants disagree with this type of analysis and place a great deal of weight on one FDCPA case that appears to have reached a contrary conclusion. But a close analy-

---

1. *McNair* and *Riding* are only two of the many cases around the country rejecting application of the *Rooker–Feldman* doctrine in the FDCPA context. *See Naranjo v. Universal Sur. of Am.,* 679 F.Supp.2d 787, 795 (S.D.Tex. 2010) (citing cases and holding FDCPA claim

based on filing suit on time-barred debt was not subject to *Rooker–Feldman* ); *Ness v. Gurstel Chargo, P.A.,* 933 F.Supp.2d 1156, 1162 (D.Minn.2013) (citing cases and holding FDCPA claim not barred by *Rooker–Feldman* ).

sis of that case shows it does not support Defendants' argument.

In *Howard v. RJF Financial, LLC.* No. CV–11–1213–PHX–GMS, 2012 WL 170904 (D.Ariz. Jan. 20, 2012), the defendant had filed a state court lawsuit seeking to collect on a debt and the state court had entered judgment against the plaintiff. The plaintiff then filed FDCPA claims, alleging the defendant violated the FDCPA because the state court suit was an "attempt[ ] to collect a debt that was not owed." *Id.* at *1. The plaintiff also alleged the defendants violated the FDCPA because the state court suit had been filed outside the statute of limitations. *Id.* The district court dismissed all claims as barred by the *Rooker–Feldman* doctrine. The district court's supporting analysis, however, is not clearly tethered to *Rooker–Feldman.* Instead, the district court concluded the plaintiff "had the opportunity to argue [his FDCPA claims] in state court, and either failed to do so or did not do so successfully." *Id.* at *2. The district court also stressed "[t]he state court was competent to hear [the plaintiff's] arguments that the suit was time-barred and that it violated FDCPA, but [the plaintiff] chose not to bring those arguments." *Id.* On appeal, *Howard* was affirmed with no explanation other than the entire suit was properly dismissed because the "action amounted to a forbidden 'de facto appeal' of a state court judgment." *Howard v. RJF Fin. LLC,* 538 Fed.Appx. 824, 825 (9th Cir. 2013).

It is difficult to square the result in *Howard* with the Ninth Circuit's more substantive discussions of the *Rooker–Feldman* doctrine. But given the allegations in *Howard,* it appears the case actually involved a basic application of the two-step *Rooker–Feldman* inquiry. The plaintiff in *Howard* brought his FDCPA claims seeking, among other things, to "reverse or vacate the judgment of a state court." No. CV–11–1213–PHX–GMS, 2012 WL 170904, at *2. That request seems to indicate that at least one of the FDCPA claims in *Howard* qualified as a de facto appeal of the state court judgment. Accepting that as true, proper application of the *Rooker–Feldman* doctrine barred all other inextricably intertwined claims. *See Bell v. City of Boise,* 709 F.3d 890, 897 (9th Cir.2013). That is, once one of the claims in *Howard* was determined to be a de facto appeal, all other inextricably intertwined claims— such as pursuing the debt after the statute of limitations applied—were also barred.

The present suit differs from *Howard* in that there is no de facto appeal at issue. Therefore, the "inextricably intertwined" test is never triggered and Defendants' arguments based on that test are incorrect. Therefore, the Court has jurisdiction to hear the FDCPA claim.

### III. FDCPA Claim Was Not a Compulsory Counterclaim

In addition to invoking the *Rooker–Feldman* doctrine, Defendants also argue Plaintiffs' FDCPA claim was a compulsory counterclaim in the state court litigation. Therefore, Defendants believe Plaintiffs' failure to assert the FDCPA claim in the state court litigation bars them from pursuing it here. Again, Defendants are incorrect.

■ Before reaching the merits of the compulsory counterclaim argument, it is important to note that this argument can only possibly apply with respect to Defendant Autovest. Defendant FFG was not a party to the state court action and, under Arizona law, a claim cannot be a "compulsory counterclaim" if it is brought against a defendant who was not involved in the earlier litigation.[2] *Mirchandani v. BMO*

---

**2.** While Plaintiffs are now pursuing a federal law claim, the underlying judgment at issue is

that of an Arizona court. Pursuant to 28

*Harris Bank, N.A.*, 235 Ariz. 68, 326 P.3d 335, 338 (2014). The Arizona Court of Appeals has explicitly rejected the idea that the compulsory counterclaim issue is triggered when the party involved in the later suit is closely tied to one of the parties in the earlier suit. *Id.* In short, if the party in the later suit was not a party in the earlier suit, there is no issue of a possibly waived compulsory counterclaim. Accordingly, the FDCPA claim against FFG must proceed regardless of whether the FDCPA qualifies as a compulsory counterclaim with respect to Autovest.

■ Turning to Autovest, Arizona law provides that "[c]ompulsory counterclaims arise from the same transaction or occurrence that was the subject matter of the opposing party's claim; and if such claims are not pled in the first action, they are waived and barred in any subsequent action under the doctrine of claim preclusion." *Id.* at 337. The standard for determining if a claim "arises from the same transaction or occurrence is ... flexible" and requires only that "a logical relationship exists[ ] between the current cause of action and the previous one." *Id.* at 337–38. This flexible standard is not met here.

■ The suit between Plaintiffs and Autovest in state court involved a car loan. The present suit, however, involves the methods Autovest used to collect on that car loan. The strong majority view is that FDCPA claims such as Plaintiffs' are not compulsory counterclaims in actions involving the original debt. As explained by one court, a FDCPA claim based on collection activity and a claim based on the underlying debt may "[i]n some technical sense ... arise from the same underlying loan transaction and some overlap of issues may exist." *Hunt v. 21st Mortgage Corp.*, No. 2:12–CV–381–RDP, 2012 WL 3903783, at *4 (N.D.Ala. Sept. 7, 2012). But "the manner in which [an FDCPA defendant] attempted to collect [a] debt does not concern whether a valid [debt] exist[ed] between the parties and, if so, any obligations created by it."[3] *Id.* Adopting the majority view, Plaintiffs' FDCPA claim was not a compulsory counterclaim in the underlying state court case. Therefore, the claim against both Autovest and FFG can proceed.

Accordingly,

**IT IS ORDERED** the Motion for Judgment on the Pleadings (Doc. 15) is **DENIED.**

**IT IS FURTHER ORDERED** the parties shall file a proposed Rule 16 Order containing all appropriate dates within one week of this Order.

---

U.S.C. § 1738, the Court must give the Arizona judgment "the same preclusive effect as would be given that judgment under the law of [Arizona]." *White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir.2012) (quotation and citation omitted). In other words, Arizona's rules regarding compulsory counterclaims apply. *Cf. Lansford v. Harris*, 174 Ariz. 413, 850 P.2d 126, 132 (1992) (compulsory counterclaims overlap with "principles of *res judicata* ").

**3.** *See also Leatherwood v. Universal Bus. Serv. Co.*, 115 F.R.D. 48, 49 (W.D.N.Y.1987) (holding claim on underlying debt and FDCPA claim "are, of course, 'offshoots' of the same basic transaction, but they do not represent the same basic controversy between the parties"); *Hart v. Clayton–Parker & Associates, Inc.*, 869 F.Supp. 774, 777 (D.Ariz.1994) (noting "every published decision directly addressing the issue ... has found that FDCPA lawsuits and lawsuits arising from the underlying contractual debt are *not* compulsory counterclaims"); *Azar v. Hayter*, 874 F.Supp. 1314, 1317 (N.D.Fla.) *aff'd*, 66 F.3d 342 (11th Cir.1995) (similar); *Sparrow v. Mazda Am. Credit*, 385 F.Supp.2d 1063, 1068 (E.D.Cal. 2005) (similar).